# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| CREATION SUPPLY, INC.,<br>Plaintiff-Appellant,<br><br>No. 22-2300          v.<br><br>GEORGE CHERRIE,<br>Defendant-Appellee. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 1:21-cv-00529<br><br>Rebecca R. Pallmeyer,<br>          Chief Judge. |
| CREATION SUPPLY, INC., an Illinois Corporation,<br>          Plaintiff-Appellant,<br><br>No. 22-2311          v.<br><br>DAVID HAHN, an Individual and DREW L. BLOCK, and Individual,<br>          Defendants-Appellees. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 1:19-cv-06063<br><br>Rebecca R. Pallmeyer,<br>          Chief Judge. |

**Appeal from the United States District Court**
**For the Northern District of Illinois, Eastern Division**
**Case Nos. 1:19-cv-06063 and 1:21-cv-00529**
**The Honorable Rebecca M. Pallmeyer Presiding**

## CONSOLIDATED REPLY BRIEF AND APPENDIX OF PLAINTIFF-APPELLANT CREATION SUPPLY, INC.

Edward L. Bishop
Nicholas S. Lee
James J. Jagoda
BISHOP DIEHL & LEE, LTD.
1475 East Woodfield Road
Suite 800
Schaumburg, Illinois 60173
(847) 969-9123

**Attorneys for the**
**Plaintiff-Appellant, Creation Supply, Inc.**

**ORAL ARGUMENT REQUESTED**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

ARGUMENT ..................................................................................................1

CSI HAS MORE THAN ADEQUATELY PLED FACTS THAT PERMIT THE
INFERENCE THAT APPELLEES ACTED IN THEIR OWN INTEREST CONTRARY
TO SELECTIVE'S INTERESTS, WITH THE INTENT OF HARMING CSI ............................1

CSI'S COMPLAINT STATE FACTS ABROGATING CHERRIE'S
CONDITIONAL PRIVILEGE .......................................................................6

THE WITHOLDING OF OWED FUNDS BY APPELLEES IS A VIOLATIOIN OF
ILLINOIS LAW THAT WAS NEVER IN SELECTIVE'S INTEREST ........................................7

HAHN AND BLOCK'S CONDUCT IS NOT IMMUNIZED
BY THE ATTORNEY LITIGATION PRIVILEGE ...................................................8

    The Litigation Privilege does not Apply to Hahn's Actions as an Insurance Adjuster .......8

    The Litigation Privilege does not Protect Hahn and Block's Actions .............................10

CSI HAS ALLEGED A CONSPIRACY CLAIM AGAINST APPELLEES .............................12

CSI HAS ALLEGED AN AIDING AND ABETTING CLAIM AGAINST BLOCK ................13

CONCLUSION ..............................................................................................13

Circuit Rule 30(d) Statement that All Required Materials are Contained
Within the Foregoing Appendix ....................................................................14

CERTIFICATE OF COMPLIANCE ..............................................................15

APPENDIX ...................................................................................................16

CERTIFICATE OF SERVICE ......................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................2

*Cotton v. Private Bank & Trust Co.*,
2004 U.S. Dist. LEXIS 4001 at *19 (N.D. Ill., Mar. 10, 2004) ...........................4

*Eagle Trust Fund v. Miller*, 2022 IL App (5th) 210156-U ...............................10

*Endre v. Williams*, 997 F.3d 714 (7th Cir. 2021) ..............................................8

*Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585 (7th Cir. 2019) ...............12

*HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*,
113 Ill.2d 145, 545 N.E.2d 672 (1989) ..............................................................4

*KMK Group, LLC v. Helco Corp.*, 380 F. Supp. 3d 790 (N.D. Ill. 2019) .........2

*Mittleman v. Witous*, 135 Ill.2d 220 (1989) .......................................................5

*MJ & Partners Restaurant Limited Partnership v. Zadikoff*,
126 F. Supp. 2d 1130 (N.D. Ill. 2000) ................................................................5

*North Shore Medical Center, Ltd. v. Evanston Hospital Corp.*,
1996 U.S. Dist. LEXIS 10804 at *8-9 (N.D. Ill., Jul. 31, 1996) ........................4

*O'Driscoll v. Argosy* University,
2014 U.S. Dist. LEXIS 23201 at *12-13 (N.D. Ill., Feb. 25, 2014) ...................3

*Tamburo v. Estate of Steven Dworkin*,
2010 U.S. Dist. LEXIS 137817 at *15-16 (N.D. Ill., Dec. 29, 2010) .................2

*Thornwood, Inc. v. Jenner & Block*,
344 Ill. App. 3d 15, 799 N.E.2d 765 (1st Dist. 2003) ......................................12

*Toyo Tire Corp. v. Atturo Tire Corp.*,
2021 U.S. Dist. LEXIS 24544 at *15-16 (N.D. Ill., Feb. 9, 2021) ...................11

*Walch v. Morgan*, 2021 U.S. Dist. LEXIS 170551 at *14 (N.D. Ill., Sep. 3, 2021).....................11

**Statute**

215 ILCS 5/155 ...................................................................................................... *passim*

**Rules and Codes**

Illinois Admin. Code 50 § 919.50(a) .............................................................................34

Illinois Supreme Court Rule 23 .....................................................................................10

## ARGUMENT

Appellees' assertion that CSI has not pled facts to support the inference that Appellees abused any conditional privilege to interfere with the insurance contract between CSI and Selective flies in the face of the actual allegations of CSI's Complaints.  CSI has alleged numerous facts showing that Appellees acted in their own interests, contrary to Selective's interests and in violation of Illinois law and Selective's policies, with the specific intent to harm CSI.

Moreover, the attorney litigation privilege does not apply to CSI's tortious interference claim, and even if it did, CSI has alleged facts showing that Hahn was not acting as Selective's attorney with respect to CSI's insurance claim and the attendant litigation.  CSI has also alleged facts showing that Hahn's and Block's conduct was not pertinent to their representation of Selective such that the privilege does not apply. For these and other reasons demonstrated in CSI's briefing, the District Court's dismissals of CSI's Complaints against Appellees should be reversed.

## CSI HAS MORE THAN ADEQUATELY PLED FACTS THAT PERMIT THE INFERENCE THAT APPELLEES ACTED IN THEIR OWN INTEREST, CONTRARY TO SELECTIVE'S INTERESTS, WITH THE INTENT OF HARMING CSI

Appellees state on page 14 of their Brief that the "District Court considered CSI's 'additional facts' in its amended pleading, and concluded, basically, that they were just labels and conclusions, and formulaic recitations of the elements of a cause of action.  Thus, they were (a) not really facts, and (b) insufficient to justify further proceedings."  Appellees point to no such findings by the District Court.  That is because the District Court never made such findings.  The District Court's decision rested solely on privilege grounds.

Appellees argue that CSI has not pled facts that would indicate or support that they acted without justification or maliciously toward CSI.  Rather, Appellees argue, that CSI has only alleged facts showing that the Appellees were doing their jobs, dressed up with conclusions and rhetoric.

Appellees simply ignore the factual allegations of the First Amended Complaint "FAC" against Hahn and Block and the Original Cherrie Complaint "OCC" against Cherrie. As CSI demonstrated in its opening Brief, it has alleged facts that permit the inference that Appellees abused any privilege they may have had, *i.e.,* that they acted, for instance, for the purpose of harming CSI, for their own interests, or contrary to Selective's interests. *KMK Group, LLC v. Helco Corp.*, 380 F. Supp. 3d 790, 800 (N.D. Ill. 2019) (allegations allowed reasonable inference that defendant's conduct was without justification, including intentional delay in approval of proposed contract amendment; adequate allegation of malice; motion to dismiss denied); *Tamburo v. Estate of Steven Dworkin*, 2010 U.S. Dist. LEXIS 137817 at *15-16 (N.D. Ill., Dec. 29, 2010) (viewing fact allegations most favorable to plaintiff, defendants' abuse of any conditional privilege by failing to investigate whether their statements were true was apparent from the face of the complaint; plaintiff did not plead itself out of court). CSI is further permitted to generally allege Defendants' states of mind in pursuing their own interests as opposed to Selective's, and in acting to harm CSI. *KMK*, 380 F. Supp. 3d 790, 800 (N.D. Ill. 2019) (states of mind including acting maliciously and in bad faith may be alleged generally when backed up by allegations in complaint). The District Court was required to accept CSI's allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Appellees narrowly focus on several of the summary allegations in the FAC and CC to assert that no facts are pled that support the inference that Appellees abused any conditional privilege. For instance, on page 19 Appellees state that CSI has not alleged facts supporting CSI's allegation that Hahn acted in a dual role as Selective's and his own attorney, or that Hahn could not be impartial in his primary duty to Selective when his own conduct was at issue resulting in a conflict of interest. Appellees ignore that CSI need only allege facts permitting such an inference. As shown in CSI's opening Brief, it has certainly done so.

Appellees try to downplay the fact that Hahn's actions were contrary to Selective policies as stated in it claims manual. However, such contrary actions give rise to the inference that Hahn was not acting in Selective's interests. *O'Driscoll v. Argosy* University, 2014 U.S. Dist. LEXIS 23201 at *12-13 (N.D. Ill., Feb. 25, 2014). On page 19, Appellees play semantic "must" or "should" games with the manual's prohibition against an adjuster's handling of coverage litigation for claims he is responsible. Appellees also argue that Hahn did not handle the coverage litigation for Selective. However, that Hahn himself hired Block goes to show he actually was handling the litigation. Moreover, CSI's allegation that Hahn did handle the litigation must be taken as true with respect to a motion to dismiss.

Appellees argue on page 20 that CSI's allegations regarding Hahn's violation of conflict of interest rules for attorneys is irrelevant as this is not a malpractice case. Although this may not be a malpractice case, any violation of the conflict of interest rules show that Hahn was acting contrary to Selective's interests and in his own interests with respect to handling of CSI's claim and the coverage litigation. Moreover, it is plain that Hahn's conduct was the central focus of both the coverage litigation in state court and the breach of contract and Section 155 litigation before Judge Kocoras. Appellees assertion that Hahn's conflict does not negate his status as Selective's agent may be true, but it does show that he was acting contrary to Selective's interests to vitiate any claim of conditional privilege.

On page 21, Appellees argue that the allegations regarding Appellees' financial gain reasons are based on their roles as Selective's agents. As CSI has alleged, Block, Hahn and Cherrie hid from Selective the true nature of the claim dispute with CSI and the proceedings related thereto to preserve their employment, or in Block's case, continued representation of Selective. Such allegations support the inference that they acted in their own interests contrary to Selective's.

*Cotton v. Private Bank & Trust Co.*, 2004 U.S. Dist. LEXIS 4001 at *19 (N.D. Ill., Mar. 10, 2004) (allegations that agent was motivated by commission and knowingly pursued illegal means to complete purchase permits inference that defendant acted contrary to best interests of clients; motion to dismiss based on qualified privilege denied).

On pages 21-22, Appellees also mischaracterize CSI's allegations to make a straw man argument, that merely because the Illinois Circuit Court found that Hahn's denial of coverage was wrong does not mean that Hahn was acting against Selective's interests. Selective ignores CSI's allegations that Judge Kocoras found that denial to be so vexatious and unreasonable as to violate Section 155 of the Illinois Insurance Code, giving rise to the inference that such denial was intended to harm CSI. Such conduct cannot be in Selective's interest.

Appellees argue on page 22 that CSI allegations regarding Appellees' unfair claims practices and violations of Illinois insurance law were done on Selective's behalf, and not personal acts of Appellees. However, allegations of violations of law by Appellees as agents of Selective permit the inference that such actions were not in Selective's interests. *North Shore Medical Center, Ltd. v. Evanston Hospital Corp.*, 1996 U.S. Dist. LEXIS 10804 at *8-9 (N.D. Ill., Jul. 31, 1996) (actual malice to harm plaintiffs can be inferred from allegations that defendant acted in violation of zoning laws; such actions unrelated to actual needs; no justification for actions); *Cotton*, 2004 U.S. Dist. LEXIS 4001 at *19; *HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 113 Ill.2d 145, 545 N.E.2d 672, 678 (1989) (using illegal means to induce a breach of contract is not privileged).

Appellees' attempts to distinguish CSI's cited cases because they involve allegations of personal motives, actions at odds with the principal's interests, or false statements to third parties flatly fail. Appellees argue that CSI's allegations contain no factual allegations of self-interested

4

conduct or false statements of fact. As shown in its opening Brief and herein, CSI has plainly alleged that Appellees had personal motives, including keeping their jobs by keeping the truth from Selective about how poorly things were going in the Illinois and federal courts, thus resulting in a financial gain for Appellees. As also show by CSI in its opening Brief, its allegations in the FAC and OCC support the inference that Appellees' actions were intended to harm CSI, and therefore were completely contrary to Selective's interests. CSI's complaints also have alleged that Appellees have made false and specious statements regarding coverage and the dispute with CSI to Selective. Contrary to Selective's assertion, CSI has done far more than recite the elements of its claims and, instead, has alleged specific conduct by Appellees that is not protected by any conditional privilege. Appellees' argument that the privilege in several of the cases cited by CSI is in the context of defamation claims is irrelevant as false statements can give rise to a tortious interference claim. *Mittleman v. Witous*, 135 Ill.2d 220, 251 (1989) (statements giving rise to defamation constituted the wrongful means to state a tortious interference claim).

Appellees also attempt to make an issue of CSI's case law holding that whether a conditional privilege has been abused is a question of fact. *See*, *MJ & Partners Restaurant Limited Partnership v. Zadikoff*, 126 F. Supp. 2d 1130, 1136 (N.D. Ill. 2000). However, CSI is not relying solely on that evidentiary standard. Rather, as CSI has shown, it has alleged a multitude of facts that would allow the inference that Appellees abused any conditional privilege they may have had.

Appellees assert in footnote 3 that Judge Kocoras' findings that Hahn's grounds for wrongly denying CSI's claim were false, irrelevant, or specious means that he simply disagreed with Hahn's opinion. Judge Kocoras plainly did more just disagree with that opinion. He found it so vexatious and unreasonable as to violate Section 155 of the Illinois Insurance Code. In

addition, that the declination letter was addressed to CSI is irrelevant.  The grounds in the letter

were false and specious no matter the named recipient of the letter.

**CSI'S COMPLAINT STATE FACTS ABROGATING**
**CHERRIE'S ALLEGED CONDITIONAL PRIVILEGE**

CSI has alleged facts supporting the inference that Cherrie, as Hahn's direct supervisor,

adopted, ratified and continued Hahn's and Block's interference (CC ¶¶46, 113-115, 124, 128-

133, 159, 161-171, 177).  Cherrie argues that CSI has not alleged facts that would support his

having the power to rectify all the wrongs committed against CSI once he became Hahn's

supervisor.  As Hahn's supervisor, however, the inference is certainly reasonable that he did have

that power but obviously did not exercise it, but rather joined in such conduct.  Thus, Cherrie's

argument that he was not involved in the coverage denial fails, and in any event, CSI has alleged

facts showing Cherrie's unambiguous and direct interference with respect to the insurance contract

between CSI and Selective.

Cherrie directly prevented Selective's required payment to CSI in the amount of undisputed

fees and expenses CSI incurred in defending itself in the Oregon Action that Hahn had previously

been given authority to pay (CC ¶68, 70, 71).  CSI's allegations permit the inference that Cherrie's

instructions not to pay CSI were in retribution for CSI prevailing in the Illinois Circuit Court,

bringing Section 155 claims before the District Court, and trying to force CSI to capitulate (CC

¶163), *i.e.,* to harm CSI.  CSI has also alleged that Cherrie's actions placed Selective in further

legal jeopardy by continuing to deepen Selective's Section 155 liability and add to that a violation

of the Illinois Insurance regulations, namely Ill. Admin. Code 50, § 919.50(a), which requires

undisputed claim amounts be paid within thirty days.  All of these acts are certainly contrary to

Selective's interests.  CSI has also alleged that the withheld funds were not paid until November

2015 at the insistence of another Selective employee, Mr. Richmond, after he learned such payments were being withheld (CC ¶81-87).

## THE WITHOLDING OF OWED FUNDS BY APPELLEES IS A VIOLATION OF ILLINOIS LAW THAT WAS NEVER IN SELECTIVE'S INTEREST

Contrary to Appellees' assertions, Appellees' withholding of funds was not part of a legal strategy or position regarding CSI's coverage claim.  In February 2015, the Illinois appellate court affirmed the duty to defend, yet Appellees withheld undisputed fees and expenses until at least November 2015.  Appellees' withholding of fees and expenses was to cover their incompetence in handling CSI's claim, and for Cherrie not doing his job in supervising Hahn as they would have had to request from Selective's management funds to pay CSI for those fees and expenses.  The hope was that CSI would be financially broken by withholding the money before CSI could expose their vexatious and unreasonable conduct.  Block chose to assist Hahn and Cherrie in their personal endeavors rather than reporting up Selective's management chain as required by the Illinois rules of professional conduct.  CSI has also alleged that Cherrie participated with Hahn and Block in failing to keep Selective's management informed to cover the fact that Hahn provided a fundamentally flawed and vexatious denial of coverage to CSI, and to cover their failure in performing their jobs.

Contrary to Appellees argument, withholding of funds for more than nine months after the Illinois appellate court determined the coverage issue was not justified.  In addition, the specific amount of $145,000 that Cherrie told Hahn not to pay was not an unsettled financial liability, it was $145,000, and certainly after the Illinois appellate court ruling, CSI's entitlement to such funds was no longer unsettled.

7

In view of the above and CSI's factual allegations fully demonstrated in its opening Brief, CSI has more than adequately alleged facts supporting the inference that Appellees conduct is not subject to any conditional privilege.

## HAHN AND BLOCK'S CONDUCT IS NOT IMMUNIZED BY THE ATTORNEY LITIGATION PRIVILEGE

### The Litigation Privilege does not Apply to Hahn's Actions as an Insurance Adjuster

Appellees assert that Hahn was employed as Selective's in-house claims counsel, so he is absolutely privileged to interfere with the contract between CSI and Selective. However, CSI's FAC allows the inference that Hahn was not acting as an attorney but as an adjuster while denying CSI's claim and instituting and participating in litigation against CSI. Moreover, Appellees' assertion now that Hahn was acting as an attorney while interfering with CSI's contract flies in the face of representations to the District Court in the Selective Case. Specifically, in the Selective Case, CSI moved to disqualify Hahn from representing Selective due to conflicts of interest (Dkt. 217)[1]. The District Court denied the motion as moot "for the reasons stated in open court" (Dkt. 222). The reasons stated in open court at a February 22, 2018 hearing are contained in this exchange with the District Court concerning Mr. Hahn's status:

> THE COURT: Can I stop you a second? If he were simply agreeable to be a witness and act solely in that capacity, would you still lodge this motion?
> MR. BISHOP: Well, one of the problems we have had is we have asked for documents that he has passed back and forth within the company. And they have said we cannot get them because they are attorney/client privilege. We have been excluded from –
> THE COURT: Hold on. Just stop there. Let me see if I can get to the nub of this. You say he is just a witness in this case?
> MR. LITCHFIELD: Yes, Judge.
> THE COURT: And he is not a lawyer?
> MR. LITCHFIELD: He is not our advocate.

---

[1] The referenced documents from the Selective Case are in the attached Appendix. The Court may take judicial notice of documents filed in that related case. *Endre v. Williams*, 997 F.3d 714, 717 (7th Cir. 2021).

THE COURT: Is he withholding –

MR. LITCHFIELD: He is an attorney.

THE COURT: I know he is an attorney, but I want to know what he is in this case.

MR. LITCHFIELD: What he is in this case is he is my client.

THE COURT: Okay.

MR. LITCHFIELD: He is my client representative.

THE COURT: He is not acting in an attorney capacity?

MR. LITCHFIELD: Yeah, I have -- we have -- not withheld documents because he was acting in an attorney/client –

THE COURT: No, no, no. That was not my question.

MR. LITCHFIELD: Okay.

THE COURT: My question is: Is his role in this case as a witness or as a lawyer, since he cannot occupy both positions?

MR. LITCHFIELD: As a witness.

THE COURT: As a witness.

MR. LITCHFIELD: He is a lawyer, but he is a witness.

THE COURT: So, then, the second question is, because he said documents have been withheld presumably on the basis of the lawyer/client privilege, is that true or not?

MR. LITCHFIELD: I don't believe it to be true. None are identified in their motion and I am aware of none.

THE COURT: What documents have been withheld with that sanctity attached to them?

MR. BISHOP: There are a lot of documents that have been redacted –

THE COURT: Okay.

MR. LITCHFIELD: -- and that was in my motion.

THE COURT: Here is what we are going to do. **I am going to deny the motion on the basis that he has agreed that he is not a lawyer in this case, he is simply a witness.** So, there is no occasion for me to make that determination. Therefore, no attorney/client privilege can be asserted having to do with documents that he has some knowledge about or involvement with or in some other business relationship connected to. Okay?

(Feb. 22, 2018 Transcript at 4:14-6:17, Selective Case Dkt. 229, provided in the attached appendix, emphasis added). Appellees' assertion that Hahn was acting as Selective's attorney is directly contrary to that represented to the District Court. As Hahn was not acting as an attorney when handling CSI's insurance claim or the litigations with CSI, the absolute litigation privilege does not apply to him.

Appellees try to obfuscate Hahn's role pertaining to CSI's allegations as to whether he was an adjuster or attorney for Selective with regard to conflict of interest issues. However, CSI's

allegations are perfectly consistent. To the extent that Hahn was an attorney employed by Selective, regardless of his role with respect to CSI's claim or the litigation engendered by the failure to defend, as CSI has alleged, he owed Selective an attorney's duty not to act against its interests either in handling CSI's claim or in connection with litigation against CSI. As CSI has alleged, Hahn breached that duty by failing to keep Selective apprised of his actions, including with Block appointing himself as a witness at trial, agreeing with Block and Cherrie that Cherrie be Selective's corporate representative at trial, and engaging in such conduct that conflicts with Selective's interests.

<u>The Litigation Privilege does not Protect Hahn's and Block's Actions</u>

The absolute attorney privilege extends to statements and certain conduct made while and in furtherance of representing a client. The privilege does not give an attorney *carte blanche* to commit intentional torts without consequence. An absolute privilege for statements and conduct made by an attorney in furtherance of representing a client is one thing, extending that privilege to an attorney's actions that have no bearing on the litigation is another.

The District Court recognized that "no Illinois court has specifically held that the absolute privilege applies to interference with contract claims," yet it so extended the privilege. Appellees point to an appellate decision, *Eagle Trust Fund v. Miller*, 2022 IL App (5th) 210156-U that, pursuant to Illinois Supreme Court Rule 23, may not be cited as precedent. That case is irrelevant, as the plaintiffs in that case had specifically alleged that the attorneys' actions were in furtherance and for the benefit of the attorneys' representation of another defendant. *Id*. at ¶36. The plaintiffs also alleged that an attorney's hiring of a firm to perform decryption services on behalf of his clients was part of the interference. *Id*. at ¶37. The court found that these actions were in furtherance of the representation of the clients.

Here, however, CSI has clearly alleged that Appellees actions were not in furtherance of any representation of Selective but were contrary to Selective's interests. Furthermore, vexatiously and unreasonably denying an insurance claim by Hahn acting as an insurance adjuster, which Block adopted, in violation of Section 155 of the Illinois Insurance Code is not litigation conduct. That no litigation was pending at the time reinforces that it was not. *Walch v. Morgan*, 2021 U.S. Dist. LEXIS 170551 at *14 (N.D. Ill., Sep. 3, 2021). In addition, wrongfully withholding undisputed fee amounts to be reimbursed to CSI pursuant to CSI's insurance policy after a court determined the coverage issue, also is not litigation conduct, especially since Hahn and Cherrie admittedly knew what was owed and when (*i.e.,* promptly).

The litigation privilege is subject to the pertinency requirement *Toyo Tire Corp. v. Atturo Tire Corp.*, 2021 U.S. Dist. LEXIS 24544 at *15-16 (N.D. Ill., Feb. 9, 2021). The conduct must be pertinent to the representation in that it must relate to and be in furtherance of the representation in the proposed or pending litigation. *Id*. Public policy calls for attorneys to be given the utmost freedom in their efforts to secure justice for their clients. *Id*. at *17. However, neither the needs of the judicial system or securing justice for Selective are furthered by, as CSI has alleged, vexatiously and unreasonably denying coverage, instituting baseless coverage litigation to attempt to bully CSI into submission, deceptively failing to keep the client Selective informed of the true nature and status of CSI's claim and the litigation, wrongfully withholding undisputed amounts of money rightfully due to CSI after judicial determinations that a duty to defend was owed to CSI, acting in conflict with Selective's interests, or acting contrary to Selective's stated policies.[2] Worse, continuing in the withholding of funds for nine months after a final appellate decision that

---

[2] CSI does not argue a malice exception to the litigation privilege. CSI argues that since the absolute privilege does not apply, the best that can be hoped for is the qualified privilege. As CSI has also shown, the qualified privilege does not apply to Hahn's and Block's conduct.

CSI was owed a duty to defend is not pertinent to the representation of Selective with respect to whether CSI was owed a defense or an attempt to secure justice for Selective. Rather, it was additional fodder for CSI's Section 155 claim showing Appellees' vexatious and unreasonable conduct.

Hahn and Block assert that coverage litigation is almost the inevitable result of a letter declining coverage. That would certainly not be the case for a meritorious declination of coverage. That Hahn and Block instituted a baseless coverage action against CSI, an action that Judge Kocoras found to be part of their vexatious and unreasonable conduct violating Section 155, does not mean that coverage litigation is inevitable. Moreover, instituting such a suit cannot be pertinent to or in furtherance of representation of a client. Rather, it is detrimental to that representation.

Appellees' attempts to distinguish CSI's cited cases, *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585 (7th Cir. 2019) (rejecting attorney's contention that an attorney cannot aid and abet his client's fraud as a matter of law and affirmed a judgment against an attorney for aiding and abetting the fraud) and *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 799 N.E.2d 765, 768 (1st Dist. 2003) on the ground that CSI has not asserted a fraud claim are unavailing. Fraud, like intentional interference with contract, is an intentional tort. The court in *Thornwood* stated that an attorney assisting a client to commit a tort is not privileged. Similarly, the litigation privilege cannot permit an attorney to commit intentional torts with impunity.

## CSI HAS ALLEGED A CONSPIRACY CLAIM AGAINST APPELLEES

CSI has demonstrated that it has alleged tortious interference claims against Appellees. Thus, the District Court's dismissal of CSI's conspiracy claim against them solely because of a lack of underlying tort was in error.

## CSI HAS ALLEGED AN AIDING AND ABETTING CLAIM AGAINST BLOCK

As CSI has shown, it has stated claims for tortious interference against Block for tortious interference. Thus, the District Court's dismissal of CSI's aiding and abetting claim against Block solely because of a lack of underlying tort was in error.

## CONCLUSION

CSI respectfully requests that the District Court's dismissals of the complaints against Appellees be reversed and remanded.

Date: January 18, 2023                         Respectfully submitted,

/s/ Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
James J. Jagoda
jjagoda@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
(847) 969-9123

**<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>**

This document complies with Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 32(c) because, excluding parts of the document exempted by Fed. R. App. P. 21(f), this document contains 4,077 words.

Dated:  January 18, 2023                    <u>/s/ Edward L. Bishop</u>
                                            Edward L. Bishop

**APPENDIX**

## <u>TABLE OF CONTENTS FOR APPENDIX</u>

Dkt. No. 217 – February 16, 2018 CSI's Motion to Disqualify David Hahn from Representing Selective (PageID#: 4910)

Dkt. No. 222 – February 22, 2018 Notification of Docket Entry (PageID# 4953)

February 22, 2018 Transcript of Proceedings before Judge Charles P. Kocoras

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CREATION SUPPLY INC., | Case No.: 1:14-cv-08856 |
| Plaintiff, | |
| v. | **JURY DEMAND** |
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | **JUDGE: Charles P. Kocoras** |
| Defendant. | |

**CSI'S MOTION TO DISQUALIFY DAVID HAHN
FROM REPRESENTING SELECTIVE**

Plaintiff Creation Supply, Inc. (CSI) moves to disqualify David G. Hahn (Hahn) from representing Defendant Selective Insurance Company of the Southeast (Selective) with respect to Selective's dispute with CSI, and from testifying on Selective's behalf at either the bench trial on CSI's Section 155 claim, or the damages jury trial on CSI's breach of contract claim due to a concurrent conflict of interest.

It is generally the responsibility of the attorneys undertaking a representation to resolve conflicts, however, when those attorneys have neglected their duty, opposing counsel may raise the question if they have "evidence clearly calling into question the fair and efficient administration of justice." *iHealthcare, Inc. v. Greene*, 2012 U.S. Dist. LEXIS 77760 at *10-11 (N.D. Ind. Jun. 5, 2012), citing, Rule 1.7, Committee Notes. Here, on February 7, 2018, CSI requested that Selective's attorneys voluntarily remove Hahn from this case. Disappointingly they refused, thus necessitating this motion.

## I.  __BACKGROUND__

Hahn is an attorney licensed to practice in New Jersey (Exhibit A) and employed by Selective Insurance Company of America (SICA)[1] as Complex Claims Counsel (Hahn 12/16/15 Dep. at 17:17-20).[2]  CSI's claim for coverage in connection with *Too Marker* (Oregon Action) was assigned to Hahn as Complex Claims Counsel (Hahn 12/16/15 Dep. at 18:13-23).  Hahn evaluated CSI's claim and wrongfully denied CSI coverage (Dkt. 146) in his position as Complex Claims Counsel (Hahn 12/16/15 Dep. at 18:24-19:6).  The June 22, 2012 letter denying CSI coverage, authored by Hahn, listed his title as Complex Claims Counsel (Exhibit C).  Hahn is SICA's only Complex Claims Counsel (Hahn 12/16/15 Dep. at 31:22-32:1), and he continues to be employed by SICA as Complex Claims Counsel.

CSI brought this action against Selective in view of, among other things, Hahn's mishandling of CSI's claim and withholding of funds owed to CSI to force CSI to settle its claim for pennies on the dollar.  Over the past six years, Hahn has been the only Selective employee who has participated in this dispute and CSI's claim.  Hahn signed all interrogatory responses on behalf of Selective in both the Illinois courts and in this action. Hahn personally performed document searching on Selective's behalf in response to CSI's requests. (Hahn 12/16/15 Dep. at 99:5-15).  Hahn was Selective's apparently self-designated Fed. R. Civ. P. 30(b)(6) witness in this action (Hahn 3/10/16 Dep. at 4:10-16).[3]  Hahn has been the only Selective employee present at all three failed formal settlement attempts in both the Illinois courts and here.  Arguably, all three attempts failed primarily because of one person – Mr. Hahn - acting in his own self-interest

---

[1] Hahn works in SICA's Branchville, New Jersey headquarters office.  SICA is the parent company of Selective.

[2] Excerpts from Hahn's 12/16/15 deposition transcripts are attached as Exhibit B.

[3] Excerpts of Mr. Hahn's March 10, 2016 deposition as Selective's Fed. R. Civ. P. 30(b)(6) designee are attached as Exhibit E.

rather than with his client's interest.  As explained below, in the interest of the "fair and efficient administration of justice," Hahn must be disqualified from participating in the defense of this action, and from testifying on Selective's behalf.

## II.    HAHN'S DEFENDING SELECTIVE AGAINST CSI'S BAD FAITH CLAIMS BASED ON HIS OWN CONDUCT CREATES A CONFLICT OF INTEREST BETWEEN HAHN AND SELECTIVE UNDER RULE 1.7

### A.    The Rules Of Professional Conduct, Including The Conflict Of Interest Rules, Apply To David Hahn As Selective's Complex Claims Counsel

The New Jersey Rules of Professional Conduct apply to Hahn Selective's in-house counsel.  *Kaye v. Rosefielde*, 432 N.J. Super. 421, 75 A.3d 1168, 1203, 1204 (N.J. Super Ct. App. Div. 2013).  That Hahn also acted as an adjuster for CSI's claim does not excuse him from adhering to the Rules. *Id*. at 1206-7 (attorney who acted as both COO and general counsel subject to ethical rules); *Whitman v. The Estate of Jules Whitman*, N.J Super. 256, 261, 612 A.2d 386 (N.J. Super. Law Div. 1992) ("[a] New Jersey attorney is not relieved of ethical responsibilities under our Rules when acting in a business capacity").

New Jersey Rule of Prof. Conduct RPC 1.7(a) states that an attorney shall not represent a client if the representation would involve a concurrent conflict of interest.  RPC 1.7(a)(2) states that a concurrent conflict of interest exists where there is a significant risk that representation of a client will be materially limited by the attorney's personal interest:

> **RPC 1.7 Conflict of Interest: General Rule**
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. *A concurrent conflict of interest exists if*:
>     (1) the representation of one client will be directly adverse to another client; or
>     (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person *or by a personal interest of the lawyer*.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(3) the representation is not prohibited by law; and

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

(Emphasis added).

Comment 10 to corresponding ABA Model Rule 1.7 states:

"[t]he lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, <u>if the probity of a lawyer's own conduct in a transaction is in serious question</u>, it may be difficult or impossible for the lawyer to give a client detached advice."

(Emphasis added).  Here, Hahn's conduct in handling CSI's insurance claim is the cause of both Selective's and CSI's predicament.  Mr. Hahn cannot be impartial in his primary duty to Selective when his own conduct is being called into question.   This is a clear concurrent conflict of interest between Mr. Hahn's duties to Selective and his own personal interest under RPC 1.7(a)(2).

B.     <u>Hahn Has A Personal Interest In This Dispute Under RPC 1.7(a)(2)</u>

Hahn's personal involvement with CSI's claim and Selective's litigation with CSI make it impossible for him to adequately represent Selective the corporation.   Hahn's personal interests, for example, in preserving his employment with Selective and defending his own decisions to deny CSI's claims, file a declaratory judgment suit on Selective's behalf against CSI, litigate against CSI in both the Illinois courts and here, as well as his determination of whether and when to pay CSI's attorneys' fees after the Illinois courts determined Selective

4

owed CSI a duty to defend runs counter to Selective's interest in the quick and efficient handling of CSI's claim. Witness to this is the years of litigation Selective and CSI have been forced to endure – all due to the actions of Hahn.

Moreover, as a result of Hahn's actions, CSI potentially has a claim against Hahn for interference with CSI's and Selective's contractual relations because of payments being withheld from CSI by Hahn. Likewise, Selective potentially has a claim for professional liability against Hahn resulting from his adjusting of CSI's claim and also his handling of this action while at the same time having a personal stake therein. Hahn simply cannot impartially perform his primary duty to Selective as counsel on this case when his own conduct is the subject of CSI's Section 155 and breach of contract claims here that potential lead to Hahn's personal and professional liability. The avoidance of civil or criminal liability can be the attorney's personal interest contemplated by RPC 1.7. *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 291-2, 662 A.2d 509 (N.J. 1995) (attorney has ethical obligation to advise client of potential malpractice claim); State *v. Rivera*, 232 N.J. Super 165, 178-9 (N.J. Sup. Ct. App. Div. 1989) (conflict of interest where defense attorneys allegedly became involved in scheme to have defendant marry key witness).

C.    Hahn's Personal Interest Conflict Is Not Consentable Under RPC 1.7(b).

As shown above, Hahn's acting as CSI's claims adjuster while also controlling litigation regarding his own faulty handling of CSI's claim is a plain conflict of interest between Hahn and Selective. Such a personal interest conflict is not consentable. *iHealthcare*, 2012 U.S. Dist. LEXIS at *18, 22.

Moreover, Hahn's representation of Selective as Complex Claims Counsel in this action while simultaneously acting as the adjuster for CSI's claim is directly contrary to Selective's

own Claims Manual (Exhibit D, ¶2 of page 0685, filed under seal).  Ostensibly, such provision is meant to avoid the exact situation that presents itself here because having the same adjuster throughout is neither in Selective's nor its insured's interests.  Neither Hahn nor Selective should be permitted to consent to Hahn's by ignoring its own best practices Manual and permitting a conflict it knows to potentially exist.  In fact, the Illinois Insurance Code specifically requires that Selective "adopt and <u>implement</u> reasonable standards for the prompt investigations and settlement of claims arising under its policies." *215 ILCS 5/154.6* (emphasis added).  Doing otherwise constitutes improper claims practice. *Id.*

      D.     Hahn's Adjusting Of CSI's Insurance Claim While Also Defending Selective
              <u>Against CSI's Bad Faith Claims Creates A Conflict Of Interest Under RPC 1.13</u>

As Complex Claims Counsel for Selective, Hahn's primary duty is to the organization "as distinct from its directors, officers, employees, members, shareholders or other constituents." RPC 1.13(a).  Under RPC 1.13(b), if Hahn knows that an officer, employee or other person associated with Selective is engaged in action, intends to act or refuses to act in a matter related to his representation of Selective that is a violation of a legal obligation to Selective or a violation of law [i.e., the Illinois Insurance Code] which reasonably might be imputed to Selective, and is likely to result in substantial injury to Selective, he is required to "proceed as is reasonably necessary in the best interest of the organization."  Proceeding "in the best interests" of Selective could include "referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law." RPC 1.13(b)(3).

As the Complex Claims Counsel for Selective, Hahn must represent the corporation as opposed to any employee of the corporation.  Here however, Hahn, because he acted as the adjuster in denying coverage for CSI's claim in breach of CSI's insurance contract with

Selective, and because his conduct is the basis for CSI's Section 155 claim against Selective, *is also the employee* who has engaged in actions constituting a potential violation of law which can be imputed to Selective. Under RPC 1.13(b)(3), Hahn should have voluntarily referred the matter "up the ladder" to a higher authority within Selective to avoid any conflict of interest. Instead, Hahn has put himself in the position of defending his own actions while also acting as Selective's Complex Claims Counsel. Hahn's presence has both caused this dispute and hindered its resolution. Hahn cannot comply with RPC 1.13, and should be disqualified from acting as Selective's counsel in this matter.

## III. MR. HAHN SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL UNDER RULE 3.7

Under RPC 3.7(a)[4], Mr. Hahn cannot act both as a witness for Selective and as its attorney. Hahn cannot be the corporate representative at trial sitting at counsel's table and then taking the stand as Selective's Complex Claims Counsel.

Moreover, putting Hahn on the stand to testify runs the risk of exposing Hahn's conflict with Selective. As stated in Comment [6] to ABA Model Rule 3.7, adopted in RPC 3.7:

**Conflict of Interest**

[6] In determining if it is permissible to act as advocate in a trial in which the lawyer will be a necessary witness, the lawyer must also consider that the dual role may give rise to a conflict of interest that will require compliance with Rules 1.7 or 1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer the representation involves a conflict

---

[4] RPC 3.7 Lawyer as Witness
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
      (1) the testimony relates to an uncontested issue;
      (2) the testimony relates to the nature and value of legal services rendered in the case; or
      (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

of interest that requires compliance with Rule 1.7. This would be true even though the lawyer might not be prohibited by paragraph (a) from simultaneously serving as advocate and witness because the lawyer's disqualification would work a substantial hardship on the client. Similarly, a lawyer who might be permitted to simultaneously serve as an advocate and a witness by paragraph (a)(3) might be precluded from doing so by Rule 1.9. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. If there is a conflict of interest, the lawyer must secure the client's informed consent, confirmed in writing. In some cases, the lawyer will be precluded from seeking the client's consent. See Rule 1.7. See Rule 1.0(b) for the definition of "confirmed in writing" and Rule 1.0(e) for the definition of "informed consent."

Hahn will ostensibly testify as to his handling of CSI's claim and the subsequent litigation with CSI. Questioning Hahn as to his handling of the CSI could potentially expose Hahn to personal and professional liability. Such testimony would also be contrary to Selective's interest in leaving it exposed to potential further liability in this action and with the Illinois Insurance Commission as a result of Hahn's actions. Thus, Hahn's testimony as Selective's lawyer could work a potential hardship on Selective and a potential privilege waiver issue. He should be precluded from testifying on Selective's behalf. *IHealthcare*, 2012 U.S. Dist. LEXIS 77760 at *21-22 (attorney for corporation disqualified under corresponding Indiana Rule 3.7).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, CSI respectfully requests that the Court disqualify David Hahn from representing Selective, and from testifying on Selective's behalf due to a concurrent conflict of interest.

DATED: February 16, 2018                    Respectfully submitted by,


                                            /s/Edward L. Bishop
                                            Edward L. Bishop
                                            ebishop@bishoppatents.com
                                            Nicholas S. Lee
                                            nlee@bishoppatents.com
                                            James J. Jagoda
                                            jjagoda@bdl-iplaw.com
                                            Connor P. Singleton
                                            csingleton@bdl-iplaw.com
                                            BISHOP DIEHL & LEE, LTD.
                                            1475 East Woodfield Road Suite 800
                                            Schaumburg, IL 60173
                                            Phone: (847) 969-9123
                                            Fax: (847) 969-9124

                                            *Attorneys for Plaintiff Creation
                                            Supply, Inc.*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this February 16, 2018. Any other counsel of record will be served by electronic mail and/or first class mail.


                                            /s/ Edward L. Bishop
                                            Edward L. Bishop

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1**
**Eastern Division**

Creation Supply, Inc.

                                    Plaintiff,

v.                                                      Case No.: 1:14–cv–08856
                                                        Honorable Charles P. Kocoras

Selective Insurance Company of the Southeast

                                    Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, February 22, 2018:

     MINUTE entry before the Honorable Charles P. Kocoras: Motion hearing held.
For the reasons stated in open court, CSI's motion to disqualify David Hahn from
representing Selective [217] and motion for leave to file under seal [219] are denied as
moot. Mailed notice(vcf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
     CREATION SUPPLY, INC.,              )  Docket No. 14 C 8856
 4                                       )
                         Plaintiff,      )
 5                                       )
                vs.                      )
 6                                       )
     SELECTIVE INSURANCE COMPANY OF THE  )
 7   SOUTHEAST,                          )  Chicago, Illinois
                                         )  February 22, 2018
 8                        Defendant.     )  9:30 o'clock a.m.

 9
                 TRANSCRIPT OF PROCEEDINGS - MOTIONS
10             BEFORE THE HONORABLE CHARLES P. KOCORAS

11
     APPEARANCES:
12

13   For the Plaintiff:      BISHOP DIEHL & LEE, LTD.
                             BY:  MR. EDWARD L. BISHOP
14                            1475 E. Woodfield Road, Suite 800
                             Schaumburg, Illinois  60004
15

16   For the Defendant:      LITCHFIELD CAVO LLP
                             BY:  MR. DANIEL LITCHFIELD
17                            303 W. Madison St., Suite 300
                             Chicago, Illinois  60606
18

19   Court Reporter:         MS. JOENE HANHARDT
                             Official Court Reporter
20                            219 S. Dearborn Street, Suite 1744-A
                             Chicago, Illinois  60604
21                            (312) 435-6874

22
                 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
23
                        PROCEEDINGS RECORDED BY
24                       MECHANICAL STENOGRAPHY
                   TRANSCRIPT PRODUCED BY COMPUTER
25
```

1          THE CLERK:  14 C 8856, Creation Supply, Inc., vs.

2     Selective Insurance Company of the Southeast.  Motion to

3     disqualify and to seal.

4          MR. LITCHFIELD:  Good morning, your Honor, Daniel

5     Litchfield for the defendant Selective.

6          MR. BISHOP:  Good morning, your Honor, Edward Bishop

7     for the plaintiff.

8          THE COURT:  Good morning.

9          Is this your motion?

10          MR. BISHOP:  Yes, it is.

11          THE COURT:  Is it on the theory that Mr. Hahn was a

12     witness, as well as acting as a lawyer?  Is that your position?

13          MR. BISHOP:  He has been a witness; he is the lawyer;

14     and, he is also running this case for Selective, which is a

15     problem, too, because he is their counsel running the case --

16     this case.

17          THE COURT:  A lot of lawyers run their cases for their

18     client.

19          (Laughter.)

20          MR. BISHOP:  But he is also the one that is accused of

21     mishandling the claim, which, by Selective's own claims manual,

22     he can't do.

23          You can't be accused -- you can't run the claim,

24     manage the claim and, then, later on be accused -- of bad faith

25     and run that litigation, too.

1          By their own claims manual, he cannot do that.  And he

2   is doing it in this case, because he has a conflict of

3   interest.

4          He attends every settlement conference.  But does he

5   attend it in his own interest or does he attend it in

6   Selective's interest?  That is the question here at this point.

7          And it seems to be holding back justice when we are

8   trying to settle this case and we are only having to deal with

9   Mr. Hahn, and we are not exactly certain he is explaining the

10  position to management.

11         In fact, we have seen some e-mails from Mr. Hahn which

12  indicate that he is not expressing what is going on in this

13  court.  He is expressing exactly the opposite of what is

14  happening.

15         For example, one of the topics he is --

16         THE COURT:  Well, I do not need the whole book at this

17  point.  One chapter will work.

18         (Laughter.)

19         THE COURT:  You have deposed him, have you not, in

20  this case?

21         MR. BISHOP:  Yes, because they offered him.

22         THE COURT:  What is your response to that?

23         MR. LITCHFIELD:  Well, Judge, we think the motion is

24  frivolous, but it asks for really extreme --

25         THE COURT:  The --

1          MR. LITCHFIELD:  -- relief.

2          THE COURT:  The argument was not frivolous.  And

3  whether it --

4          MR. LITCHFIELD:  Well, it is on the facts, Judge, and

5  here is why.  Mr. Hahn is an employee of my client.  He works

6  with my client in a role that was not as the advocate.

7          I am the advocate.  He has no appearance in this case.

8  He is my client contact.

9          He is a witness.  He is on their witness list.  They

10  want to bar him from testifying.

11          They say they are going to call him at trial.  I do

12  not know what that is about.

13          But the advocate witness rule is not --

14          THE COURT:  Can I stop you a second?

15          If he were simply agreeable to be a witness and act

16  solely in that capacity, would you still lodge this motion?

17          MR. BISHOP:  Well, one of the problems we have had is

18  we have asked for documents that he has passed back and forth

19  within the company.  And they have said we cannot get them

20  because they are attorney/client privilege.

21          We have been excluded from --

22          THE COURT:  Hold on.  Just stop there.  Let me see if

23  I can get to the nub of this.

24          You say he is just a witness in this case?

25          MR. LITCHFIELD:  Yes, Judge.

1            THE COURT:  And he is not a lawyer?

2            MR. LITCHFIELD:  He is not our advocate.

3            THE COURT:  Is he withholding --

4            MR. LITCHFIELD:  He is an attorney.

5            THE COURT:  I know he is an attorney, but I want to

6    know what he is in this case.

7            MR. LITCHFIELD:  What he is in this case is he is my

8    client.

9            THE COURT:  Okay.

10           MR. LITCHFIELD:  He is my client representative.

11           THE COURT:  He is not acting in an attorney capacity?

12           MR. LITCHFIELD:  Yeah, I have -- we have -- not

13   withheld documents because he was acting in an attorney/client

14   --

15           THE COURT:  No, no, no.  That was not my question.

16           MR. LITCHFIELD:  Okay.

17           THE COURT:  My question is:  Is his role in this case

18   as a witness or as a lawyer, since he cannot occupy both

19   positions?

20           MR. LITCHFIELD:  As a witness.

21           THE COURT:  As a witness.

22           MR. LITCHFIELD:  He is a lawyer, but he is a witness.

23           THE COURT:  So, then, the second question is, because

24   he said documents have been withheld presumably on the basis of

25   the lawyer/client privilege, is that true or not?

1        MR. LITCHFIELD:  I don't believe it to be true.  None

2    are identified in their motion and I am aware of none.

3        THE COURT:  What documents have been withheld with

4    that sanctity attached to them?

5        MR. BISHOP:  There are a lot of documents that have

6    been redacted --

7        THE COURT:  Okay.

8        MR. LITCHFIELD:  -- and that was in my motion.

9        THE COURT:  Here is what we are going to do.

10       I am going to deny the motion on the basis that he has

11   agreed that he is not a lawyer in this case, he is simply a

12   witness.  So, there is no occasion for me to make that

13   determination.

14       Therefore, no attorney/client privilege can be

15   asserted having to do with documents that he has some knowledge

16   about or involvement with or in some other business

17   relationship connected to.  Okay?

18       And, so, I do not know.  There is a factual dispute

19   between you as to whether that privilege has been asserted.

20   So, the only way to deal with that, now that we have

21   established his position in this case -- the position he has

22   and is intending to occupy from here on -- I want you to have a

23   face-to-face session and go over the documents that you claim

24   they have not given to you, that you are entitled to, since the

25   attorney/client privilege will no longer have any validity to

1  it.  Okay?

2        So, that is how we are going to deal with the business

3  this morning.  All right?

4        Because you said they have not given you some.  And he

5  says, "We have given you everything you were entitled to.  And

6  we are not asserting the attorney/client privilege."  So, that

7  is not conducive to being resolved over the lectern here.

8        MR. LITCHFIELD:  May I make one comment, your Honor?

9        THE COURT:  Yes, you may.

10        MR. LITCHFIELD:  We do assert an attorney/client

11  privilege with regard to his communications with me and with

12  his other lawyers.

13        THE COURT:  That is a different question.

14        MR. LITCHFIELD:  Exactly.  That is my point.

15        THE COURT:  But that --

16        MR. LITCHFIELD:  I don't want counsel to come to us --

17        THE COURT:  Well, a client may assert that in

18  communications with you; but, he is purely the client.  So,

19  that is a -- that is something else, again, than how he is

20  acting --

21        MR. LITCHFIELD:  Exactly, your Honor.

22        THE COURT:  -- in this litigation.

23        MR. BISHOP:  Well, just so it's clear, he has a lot

24  of e-mails internally in Selective where he talks about this

25  case.

1          THE COURT:  Well, he can talk about it as a client

2    until he is blue in the face.  And you may be entitled to that

3    unless it is a privileged communication.

4          It sounds to me, if it is on an e-mail, and it is not

5    solely to counsel, then that privilege is not -- that

6    attorney/client privilege is not -- going to wash.

7          But you wanted me to decide or help decide what he is

8    in this case.  And we did.

9          MR. LITCHFIELD:  Judge, one additional point.  These

10   issue were taken up with Magistrate Judge Kim and --

11         THE COURT:  Well, tell him we resolved this morning a

12   status in the case.  So, Magistrate Judge Kim will not have to

13   deal with that.  Okay?

14         Have a good morning, gentlemen.

15         MR. LITCHFIELD:  Thank you, Judge.

16         THE COURT:  The motion is denied as moot.

17         MR. BISHOP:  Thank you.

18                        *   *   *   *   *

19   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

20

21   /s/ Joene Hanhardt                April 10, 2018
     Official Court Reporter

22

23

24

25

**Circuit Rule 30(d) Statement that All Required Materials
<u>are Contained Within the Foregoing Appendix</u>**

Per Circuit Rule 30(d), the undersigned certifies that all of the documents required by Fed.

R. Civ. P. 30 and Circuit Rule 30(a) and (b) are included within the foregoing Appendix and are

true and accurate copies.


Dated:  January 18, 2023                     /s/ Edward L. Bishop
                                             Edward L. Bishop
                                             Attorney for Plaintiff/Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Edward L. Bishop
Edward L. Bishop